UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-60352-CIV-ALTONAGA/Strauss

**RENTAL BOAT CORP.**,

    Plaintiff,

v.

**GREAT LAKES INSURANCE SE**,

    Defendant.

_____/

## ORDER

**THIS CAUSE** came before the Court on Defendant, Great Lakes Insurance SE's Motion for Summary Judgment [ECF No. 27] and Memorandum of Law in Support of Motion for Summary Judgment [ECF No. 29], both filed on October 16, 2020; and Plaintiff, Rental Boat Corp.'s Motion for Partial Summary Judgment on Counts I and II of Complaint and Count I of Counterclaim [ECF No. 38], filed on November 5, 2020. Plaintiff filed a Memorandum of Law in Opposition [ECF No. 36] to Defendant's Motion, to which Defendant filed a Reply [ECF No. 40]. Defendant filed an Opposition to Plaintiff's Motion [ECF No. 41], to which Plaintiff filed a Reply [ECF No. 42].

The Court has carefully considered the Complaint [ECF No. 1], the Counterclaim for Declaratory Judgment ("Counterclaim") (*see* [ECF No. 6] 5–14), the parties' written submissions,[1] the record, and applicable law. For the following reasons, Defendant's Motion and Plaintiff's Motion are denied.

---

[1] The parties' factual submissions include: Defendant's Statement of Material Facts Not in Dispute in Support of Motion for Summary Judgment ("Def.'s SOF") [ECF No. 28]; Plaintiff's Response to Defendant's Statement of Facts [ECF No. 37]; and Plaintiff's Statement of Material Facts in Support of its Motion for Partial Summary Judgment on Counts I and II of Complaint and Count I of Counterclaim ("Pl.'s SOF") [ECF No. 39].

***The facts***.[2] This case arises out of an insurance dispute. (*See generally* Compl.; Countercl.). Plaintiff is a Florida corporation with its principal place of business in Broward County, Florida. (*See* Compl. ¶ 4). Defendant is a United Kingdom-based marine insurer conducting business in Florida. (*See* Def.'s SOF ¶ 1; Compl. ¶ 5).

Plaintiff owns a 2010 50-foot Marquis vessel named "When in Rome" (the "Vessel"). (Def.'s SOF ¶ 1 (quotation marks omitted)). On April 13, 2019, Defendant issued policy number CSRYP/175020 to Plaintiff, providing its Vessel with $400,000.00 in marine hull damage coverage for the policy period April 13, 2019 to April 13, 2020. (*See* Compl. ¶ 9; *id.*, Ex. A, Policy Schedule ("Policy") [ECF No. 1-1] 2; Pl.'s SOF ¶¶ 1–2).[3] The Policy lists Plaintiff as the named assured and Luis Campoo, Esteban Iriarte, and Walter Lawrence Cryan as operators. (*See* Policy 2).

The Policy "provide[s] coverage for accidental physical loss of or damage to the [] Vessel which occurs during the period of this insuring agreement and within the limits set out in the insuring agreement declaration page, subject to the insuring agreement . . . warranties[.]" (*Id.* 6 (alterations added)). The Policy contains the following warranty, appearing under the heading titled "Additional Warranties, Terms and Conditions:" "Warranted that [] Iriarte is fully supervised by [] Campoo at all times whilst operating the [] Vessel." (*Id.* 3 (alterations added; bold omitted)). The term "fully supervised" is not defined in the Policy. (*See id.* 4–5 (listing definitions)).

---

[2] For purposes of both Motions, Defendant stipulates Plaintiff's facts are not in dispute. (*See* Def.'s Opp'n 1 ("Defendant will stipulate to the truth of the material facts which . . . Plaintiff has alleged in [its] pending Motion for Partial Summary Judgment." (alterations added)); Def.'s Reply 1 ("Defendant will stipulate to the truth of the material facts which . . . Plaintiff has alleged in [its] opposition to Defendant's pending Motion for Summary Judgment." (alterations added))).

[3] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings. Citations to deposition testimony rely on the pagination and line numbering in the original document.

On July 16, 2019, Iriarte piloted the Vessel from Miami, Florida to Bimini, Bahamas with his wife, two children, and a friend. (*See* Pl.'s SOF ¶ 7). In the days leading up to the voyage, Iriarte "had frequent conversations through WhatsApp and telephone calls with Campoo, and on the afternoon prior to departing, the two men met on the boat to review the handbook, nautical charts, and GPS and to conduct a final checkup of the boat." (*Id.* ¶ 8).

On the morning of July 16, Iriarte informed Campoo he was departing the Rickenbacker Marina toward the east through a canal. (*See id.* ¶¶ 9–10). Campoo observed and filmed Iriarte's departure from the Rickenbacker Marina to the bay from the 55th floor of his Brickell Avenue residence in Miami. (*See id.* ¶ 11). During the trip to Bimini, both Iriarte and Campoo maintained constant communication "via WhatsApp, text messaging and live video . . . , including a total of 71 WhatsApp Chats, videos, text messages, and voice messages during which they analyzed engine performance, fuel filters, weather forecast, estimated time of arrival, and other details." (*Id.* ¶ 12 (alteration added; other alteration adopted; quotation marks omitted)).

On July 17, Iriarte remained in Bimini with his family, exchanging 57 WhatsApp messages with Campoo through 6:17 p.m. when he was operating the Vessel. (*See id.* ¶ 13). Then, at around 6:30 p.m. that same evening, the bottom of the Vessel collided with the Bimini canal's rock floor, sustaining significant damage as a result. (*See id.* ¶ 14). Iriarte and Campoo "maintained communication via phone" (*id.* ¶ 16 (quotation marks omitted)) despite the fact Iriarte was tending to the emergency and evacuating his family from the stranded Vessel (*see id.* ¶¶ 15–16). Iriarte submitted a report of the accident to Campoo at 7:12 p.m. and exchanged a total of seven WhatsApp messages with Campoo that evening. (*See id.* ¶¶ 17–18).

Defendant received Plaintiff's claim for the loss on July 22, 2019 (*see id.* ¶ 19) and hired Arnold & Arnold ("Arnold") to investigate the loss (*see* Def.'s SOF ¶ 15). Arnold submitted a

written information request to Iriarte that included questions regarding Campoo's supervision. (*See* Pl.'s SOF ¶ 20; *id.*, Ex. C, Information Request [ECF No. 39-3]). Iriarte responded to the request and detailed the events that occurred during the trip to Bimini. (*See generally* Pl.'s SOF, Ex. D [ECF No. 39-4]). After an investigation, Defendant denied Plaintiff's claim because of what it found to be Plaintiff's breach of the "supervision requirement" contained in the Policy. (Compl., Ex. B, Breach of Warranty Denial of Claim [ECF No. 1-2] 1; *see also* Pl.'s SOF ¶ 24). Defendant wrote:

> In the opinion of [Defendant], this claim is not covered, as there is no evidence that [Plaintiff] complied with the supervision requirement of [the] [P]olicy.
>
> [The] [P]olicy, whilst being an all risks policy, mandates that [Iriarte] be fully supervised at all times by [] Campoo while operating the [V]essel. [Iriarte] agree[d] Campoo was not onboard the [V]essel, but claim[ed] he was "supervising" [Iriarte] from the 55th floor of a building with a view of the incident channel and texting [Iriarte]. The declarations page of [the] [P]olicy, under ["]Additional Warranties, Terms and Conditions" states:
>
> > "Warranted that [] Iriarte is fully supervised by [] Campoo at all times whilst operating the [] Vessel.["]
>
> [Defendant] point[s] out the practice of being "supervised" by a person on the 55th floor of a building is not being "fully supervised" while operating a vessel.

(Breach of Warranty Denial of Claim 2 (alterations added)).

*Plaintiff's Complaint*. On February 18, 2020, Plaintiff filed its Complaint seeking a declaration that the loss is a covered event and asserting a breach-of-contract claim against Defendant. (*See generally* Compl.).

*Defendant's Counterclaim*. Defendant filed a Counterclaim asserting two "cause[s] of action" and seeking a declaration that (1) the relationship of insurer and insured does not exist between Plaintiff and Defendant regarding the July 17, 2019 loss; (2) the Policy does not afford Plaintiff coverage for the July 17, 2019 loss; (3) Plaintiff's misrepresentation and non-disclosure

of material facts voids the coverage afforded under the Policy; and (4) Plaintiff is disentitled to any coverage under the Policy for breaching the supervision warranty. (Countercl. 6–14 (alteration added; capitalization, bold, and underlining omitted)).

***The Motions***. The two disputed motions before the Court are: (1) Defendant's Motion for Summary Judgment requesting without reference to specific claims an "Order awarding Summary Judgment" (Def.'s Mot. 2; *see generally id.*); and (2) Plaintiff's Motion for Partial Summary Judgment as to Counts I and II of Complaint and Count I of Counterclaim (*see generally* Pl.'s Mot.).

***Standard.*** Summary judgment may only be rendered if the pleadings, discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a), (c). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court draws all reasonable inferences in favor of the party opposing summary judgment. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000).

If the non-moving party bears the burden of proof at trial, the moving party may obtain summary judgment simply by: (1) establishing the nonexistence of a genuine issue of material fact as to any essential element of a non-moving party's claim, and (2) showing the Court that there is not sufficient evidence to support the non-moving party's case. *See Blackhawk Yachting, LLC v. Tognum Am., Inc.*, No. 12-14209-Civ, 2015 WL 11176299, at *2 (S.D. Fla. June 30, 2015) (citations omitted). "Once the moving party discharges its initial burden, a non-moving party who

bears the burden of proof must cite to . . . materials in the record or show that the materials cited do not establish the absence or presence of a genuine dispute." *Id*. (citing Fed. R. Civ. P. 56(c)(1); alteration added; quotation marks omitted).

"Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts." *Whelan v. Royal Caribbean Cruises Ltd.*, No. 1:12-cv-22481, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) (citation omitted). Indeed, "[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the Court should deny summary judgment" and proceed to trial. *Id.* (alteration added; citations omitted).

*Analysis*. The issue presented is whether a breach of the supervision warranty negates coverage under the Policy. (*See generally* Pl.'s Mot.; Def.'s Mem.). Both federal admiralty law and New York law[4] require the strict construction of warranties regardless of any causal connection to the alleged loss. *See Lexington Ins. Co. v. Cooke's Seafood*, 835 F.2d 1364, 1366 (11th Cir. 1988) ("[A]dmiralty law requires the strict construction of express warranties in marine insurance contracts; breach of the express warranty by the insured releases the insurance company from liability even if compliance with the warranty would not have avoided the loss." (alteration added; collecting cases)); *Great Lakes Ins. SE v. Aarvik*, No. 18-cv-60705, 2019 WL 201258, at *3–4 (S.D. Fla. Jan. 15, 2019) (setting forth relevant New York law regarding the effect of a breach of an express warranty in a marine insurance policy); *Hartford Fire Ins. Co. v. Mitlof*, 208 F. Supp. 2d 407, 412 (S.D.N.Y. 2002) ("Under New York law, recovery under a marine insurance contract

---

[4] The Policy contains the following "Service Of Suit, Choice Of Law And Forum" provision: "It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the State of New York." (Policy 18 (bold omitted)).

is precluded if a warranty is breached, regardless of its materiality to the insurer's risk." (citation omitted)).

By its present Motion, Defendant contends the "facts . . . demonstrate beyond cavil or dispute . . . Defendant is entitled to his [sic] Court's award of summary judgment." (Def.'s Mem. 1 (alterations added)). Defendant states although "Iriarte utilized various technical methods for staying in some type of contact or communication with Campoo[,] . . . at virtually no time was Iriarte 'fully supervised' by Campoo." (*Id.* 2 (alterations added)). Defendant insists that no matter how Iriarte attempts to explain the situation, "if there could have been more or better, fuller supervision, then the express warranty was breached[,]" and Plaintiff is disentitled to coverage under the Policy. (*Id.* 6 (alteration added)).

By contrast, Plaintiff asks the Court to deny Defendant's Motion and to grant its own Motion on all counts of the Complaint and Count I of the Counterclaim. (*See generally* Pl.'s Mot.). Plaintiff contends "the only legally sustainable conclusion to be reached on this record is that Plaintiff indeed complied with the 'fully supervised' warranty in the [P]olicy and thus [] [Defendant] improperly denied coverage based on an alleged violation thereof." (*Id.* 11 (alterations added)). According to Plaintiff, Defendant "has not and cannot present any counter-evidence in the record showing" Iriarte and Campoo's "line of communication . . . was ever broken[.]" (*Id.* (alterations added)). Plaintiff insists it is entitled to summary relief.[5] (*See generally id.*).

Quite simply, the Court cannot resolve — as a matter of law — the question whether

---

[5] Plaintiff dedicates a majority of its Motion to insisting Defendant's "interpretation of the 'fully supervised' warranty as requiring Campoo's physical presence on the [Vessel] is legally unsustainable at many levels[,]" citing federal admiralty law, New York law, the contra-insurer rule, and basic notions of strict construction and plain language. (Pl.'s Mot. 4–9 (alterations added)). Defendant does not disagree. (*See* Def.'s Opp'n 2 ("There is no requirement stated in Defendant's motion papers that [] Campoo be physically aboard the vessel while Iriarte is at the helm." (alteration added))).

7

Campoo "fully supervised" Iriarte "at all times whilst operating the [] Vessel" based on the facts before the Court.[6] (Policy 3 (alterations added)). On the one hand, Plaintiff states — and Defendant does not dispute[7] — "Iriarte maintained a constant line of communication via WhatsApp, text messaging and live video with Campoo" "[a]t all times during th[e] voyage" and when "Iriarte remained in Bimini." (Pl.'s SOF ¶¶ 12–13 (alterations added; other alteration adopted; quotation marks omitted)). While engaging in this "strong level of communication," Campoo and Iriarte "analyzed engine performance, fuel filters, weather forecast, estimated time of arrival, and other details." (*Id.*). According to Plaintiff, the "evidence shows" full supervision "was accomplished through an unbroken line of audio/video communication between [Iriarte and Campoo] at every point when Iriarte was operating the [Vessel] during his Bimini trip." (Pl.'s Mot. 11 (alterations added)).

On the other hand, Defendant points to evidence indicating that "during the critical period . . . between 6:17 pm [sic] and 6:30 pm [sic] on July 17, 2019, when the [V]essel was run aground . . . , [] Iriarte was not in any kind of communication with [] Campoo," thereby showing Iriarte

---

[6] The Parties appear to agree, despite filing competing Motions suggesting the contrary. (*See* Pl.'s Opp'n 8 ("In Plaintiff's favor, there is abundant evidence confirming extensive electronic communications between Iriante [sic] and Campoo during the operative time period, thereby supporting the 'fully supervised' requirement. On the other hand, the Insurer argues . . . that 'there could have been more or better, fuller supervision' by Campoo. *Therein lies the factual dispute that precludes the requested summary judgment*." (alteration added; emphasis added)); Pl.'s SOF, Ex. B., Dep. of Tony Usher (Def.'s Corp. Rep.) [ECF No. 39-2] 125:12–126:13 (Q: "So you would agree . . . as far as [this] lawsuit is concerned and [Plaintiff's] complaint is concerned, that there is a factual dispute as to whether or not your interpretation of fully supervised is the correct interpretation of how somebody should be fully supervised in this situation?" A: "Yes . . . it would certainly appear so." (alterations added))).

[7] Defendant stipulates to Plaintiff's facts because its briefing phrases the question before the Court as whether "Campoo's 'supervision' [could] have been deeper, fuller, more stringent[,]" stating "if the answer to that question is 'yes,' then Plaintiff is in manifest breach of the express warranty that Defendant[] [] insisted upon[.]" (Def.'s Opp'n 4 (alterations added); *see also* Def.'s Reply 3). Such an interpretation of the Policy would render almost any amount of supervision a "manifest breach." Certainly, an after-the-fact critique could necessarily always find that the incident could have been avoided had the operator received better supervision. The Court is unpersuaded by Defendant's leap in logic.

was not being fully supervised at all times as is required by the Policy. (Def.'s Opp'n 3 (alterations added)). Iriarte testified he "do[es not] remember" whether he spoke "with [Campoo] on the phone" before or after "the incident occurred[.]" (Pl.'s SOF, Ex. A., Dep. of Esteban Iriarte [ECF No. 39-1] 50:21–51:2 (alterations added)). Then, when pressed to explain the 55-minute time gap between text messages with Campoo, Iriarte remembered he "maintained communication" with Campoo "via phone" but did not elaborate on the extent of this communication when he was operating the Vessel. (*Id.* 58:12–60:4). According to Defendant, there is record evidence that suggests Campoo did not exercise "full[] supervi[sion]" over Iriarte's operation of the Vessel *at all times —* including "at the time of the incident."[8] (Def.'s Opp'n 3 (alterations added; quotation marks omitted)).

Considering this record, the facts identified by both parties, the unhelpful briefing, and the parties' concessions that genuine issues of material fact remain, the Court cannot (and will not) conclusively resolve as a matter of law whether Campoo "fully supervised" Iriarte "at all times whilst operating the [] Vessel." (Policy 3 (alteration added)). Both Motions are thus denied. *See Sec. Ins. Co. of Hartford v. Lubrizol Corp.*, No. 1:06-cv-215, 2008 WL 11344758, at *13 (E.D. Tex. Apr. 30, 2008) (declining to resolve as a matter of law whether the insured exercised "general supervision" over an independent contractor's activities based on facts before the court; stating it

---

[8] Plaintiff insists Defendant's position "ignores reality" and is a "bogus attempt to avoid paying a valid insurance claim." (Pl.'s Mot. 9). The Court declines to apply the ignore-the-realities and bogus-attempt doctrines.

Plaintiff further contends "the stipulated facts establish" Iriarte and Campoo "maintained an unbroken, uninterrupted line of audio/video communication at all times during Iriarte's entire outing." (Pl.'s Reply 6 emphasis and footnote call number omitted)). Yet, as noted, Iriarte testified he "do[es] [not] remember the exact moment" when he was on the "phone with [Campoo] at the time [] the incident occurred." (Dep. of Esteban Iriarte 50:21–51:2 (alterations added)). Contrary to Plaintiff's insistence, the record *does not* establish that Campoo and Irarte maintained an "unbroken, uninterrupted line of . . . communication at all times." (Pl.'s Reply 6 (alteration added; emphasis omitted)). Defendant's stipulation does not dictate a different result.

9

was "better left to a [fact finder] to decide whether [the insured's] actions constituted 'general supervision.'" (alterations added; citations omitted)); *see also Powers v. Jones*, No. 3:16-cv-635, 2018 WL 1496918, at *3 (M.D. Fla. Mar. 27, 2018) (explaining "[w]hen parties file cross-motions for summary judgment, if the Court finds factual disputes regarding issues of material fact, then it must deny both motions." (alteration added; citation omitted)).

*Conclusion*. For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Defendant, Great Lakes Insurance SE's Motion for Summary Judgment **[ECF No. 27]**; and Plaintiff, Rental Boat Corp.'s Motion for Partial Summary Judgment on Counts I and II of Complaint and Count I of Counterclaim with Incorporated Memorandum of Law **[ECF No. 38]** are **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 30th day of November, 2020.

_____
**CECILIA M. ALTONAGA
UNITED STATES DISTRICT JUDGE**

cc:   counsel of record